UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ESTECH SYSTEMS IP, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>            Defendant. | Case No.   5:24-cv-02528-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 57 |

Plaintiff Estech Systems IP, LLC brings this suit against Defendant Zoom Video Communications, Inc. for infringement of three patents: U.S. Patent Nos. 8,391,298 (the "'298 Patent"), 7,068,684 (the "'684 Patent"), and 7,123,699 (the "'699 Patent") (together, the "Asserted Patents"). The Asserted Patents are directed to systems and methods for providing communications systems across local area networks ("LANs"), including voice over IP ("VoIP") telephony. Zoom moves to dismiss Estech's First Amended Complaint ("FAC") for failure to state a claim under Rule 12(b)(6). Mot., ECF No. 57; FAC, ECF No. 52. The motion is fully briefed, and the Court heard oral argument on June 26, 2025. Opp., ECF No. 60; Reply, ECF No. 69; ECF No. 86. After careful consideration, the Court **GRANTS** Zoom's motion.

**I.    BACKGROUND**

The Court summarized the relevant factual background of this case in its previous Order dismissing Estech's original complaint. MTD Order at 1–5, ECF No. 50. The relevant facts remain the same. In the FAC, Estech reasserts the claims for direct and indirect infringement the Court previously dismissed. Attached to the FAC are three new exhibits that appear to be claim

Case No.: 5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS
1

charts[1] comparing the claims of the Asserted Patents to the Accused Instrumentalities.[2]  FAC, Exs. A, B, C, ECF Nos. 52-1, 52-2, 52-3.

## II.   LEGAL STANDARD

For the FAC to survive Zoom's 12(b)(6) motion, it must allege sufficient facts from which the Court can reasonably infer that Zoom is liable for the alleged patent infringement.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts will accept well-pled allegations in the complaint as true, but unsupported legal conclusions are not afforded the same treatment.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  As such, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements" are insufficient to state a plausible claim for relief.  *Id.*

Likewise, in the patent context, a plaintiff does not assert a plausible claim for infringement by merely reciting the elements of patent claims and concluding that the accused product practices those elements.  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  "A plaintiff is not required to plead infringement on an element-by-element basis," but the claim must be supported by factual allegations that, when taken as true, give rise to a plausible inference of infringement beyond the speculative level.  *Id.* at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)).  "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."  *Id.* at 1353.

## III.   DISCUSSION

In the MTD Order, the Court dismissed Estech's infringement claims with leave to amend to "include additional factual allegations to support a plausible claim of infringement beyond just

---

[1] Because Estech's claim charts forms the basis of its infringement claims, the Court will consider them as incorporated into the FAC by reference.  *See Khoja v. Orexigen Therapeutics, Inc*, 899 F.3d 988, 1002 (9th Cir. 2018).

[2] "Accused Instrumentalities" has the same meaning as in the FAC—*i.e.*, Zoom's telecommunications and information handling systems accused of infringing the Asserted Patents. *See* FAC ¶¶ 21–24.

Case No.:   5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS
2

identifying the products and claiming they infringe" and to correct "the conclusory nature of the allegations which merely track the claim language." MTD Order at 6–9. Zoom argues that Estech has not remedied these deficiencies in the FAC.

### A. Direct Infringement

A party who "makes, uses, offers to sell, or sells" a patented invention "without authority" directly infringes a patent. 35 U.S.C. § 271(a). To state a claim for direct infringement, a plaintiff must plead facts that give the alleged infringer fair notice of the claim and the accused misconduct. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). Zoom contends that the FAC fails to state a claim for direct infringement of any of the Asserted Patents for three reasons: (1) Estech does not explain how any of the cited facts and screenshots in its claim charts meet text of the asserted claims; (2) the claim charts fail to distinguish between any individual Accused Instrumentality or combination of Accused Instrumentalities in asserting infringement; and (3) none of the materials cited in the claim charts supports a plausible inference of infringement. The Court takes each argument in turn.

#### 1. Tying Screenshots to Claim Language

Zoom acknowledges that the new claim charts accompanying the FAC are replete with screenshots but argues that Estech fails to explain how these screenshots meet the limitations of the asserted claims. Zoom contends that without such explanation, the screenshots do not supply the necessary factual support to state a claim for direct infringement.

Zoom equates Estech's approach to that in *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018). In *Chapterhouse*, the court dismissed a claim for direct infringement that did little more than recite the elements of the asserted claims, conclude that the accused products practice those elements, and provide screenshots of the defendant's website with no further allegations. *Id.* at *2. The court acknowledged that "screenshots may be useful in laying out a plausible allegation of patent infringement," but found the complaint deficient because the plaintiff had failed to explain "how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the

Case No.: 5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS
3

1  Court to find that the *Iqbal/Twombly* standard is met." *Id.*

2  Here, too, Estech uses screenshots of Zoom and third-party documents to support its claim
3  for direct infringement. The FAC's claim charts include screenshots for each claim limitation, but
4  Estech does not explain how the content of the screenshots matches up with the language of the
5  claim limitations. Take claim limitation 13[e] of the '298 Patent, for example. Limitation 13[e]
6  requires, in part, "means for displaying on the first IP telephone a list of telephone destinations
7  stored in the second IP server." FAC, Ex. A at 65. After stating that this limitation is met, Estech
8  attaches screenshots of Zoom support pages titled "Company directory search," "How to use the
9  Contacts menu," "Encryption," and "Searching Corporate Directory (LDAP) Contact." *Id.* at 66–
10 68. Yet, Estech does not explicitly state why it has included these screenshots or what in the
11 screenshots correspond with the claim language. Nor is it readily apparent why a document
12 concerning "Encryption" is at all relevant to Limitation 13[e].

13 But that is where the similarities to *Chapterhouse* end. Unlike the complaint in that case,
14 Estech also includes narrative explanations of how parts of Zoom's system correspond to claim
15 language. Returning to the example of Limitation 13[e] in the '298 Patent, Estech alleges that
16 "[t]he 'telephone destinations' are the contacts (names with numbers or extensions) stored in
17 Zoom's system. The phone, over the WAN, can request these entries (often via a search query).
18 In response, Zoom's server can send back a list of matching contacts, which the phone then
19 displays to the user on its screen." *Id.* at 68. This description compares the language of
20 Limitation 13[e] to corresponding parts of Zoom's system, supporting an inference that Zoom
21 practices the asserted claim. To be sure, these allegations remain untethered to Estech's
22 screenshots. But screenshots aside, Estech articulates a cohesive theory of infringement that
23 matches up the language of the asserted claims with corresponding parts of the Accused
24 Instrumentalities.

25 Indeed, in later cases the *Chapterhouse* court has warned against over-reliance on
26 *Chapterhouse* and limited the case's holding to its facts. *See, e.g.*, *Liberty Peak Ventures, LLC v.*
27 *Regions Fin. Corp.*, No. 2:21-CV-00417, 2022 WL 798030, at *2 (E.D. Tex. Mar. 15, 2022);

28 Case No.: 5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS
4

1  *Fractus, S.A. v. TCL Corp.*, No. 2:20-cv-097, 2021 WL 2483155, at *2–3 (E.D. Tex. June 2,
2  2021). *Chapterhouse* presented a particularly egregious example of a complaint devoid of any
3  factual allegations apart from screenshots, and subsequent cases have made clear that failure to
4  explain screenshots is not by itself fatal to a complaint. *Fractus* is especially instructive on this
5  point. There, the court found that the plaintiff had adequately pled a direct infringement claim
6  where the complaint "[did] not list each element and sub-element of the asserted claims and map
7  them on to the accused products—*i.e.*, it [did] not include a claim chart—[but did] describe the
8  accused products in a manner that corresponds the asserted claims." *Fractus*, 2021 WL 2483155
9  at *3 (noting that the plaintiff "includes both images of the accused structures and descriptive
10 paragraphs"). Estech's FAC arguably goes beyond the complaint found to be sufficient in *Fractus*
11 because it includes claim charts breaking down the asserted claims into their respective elements.

The relevant pleading standard does not require Estech to prove that its theory of infringement at the pleading stage with detailed explanations of how screenshots demonstrate infringement. *Nalco*, 883 F.3d at 1350 (citation omitted). Rather, to survive dismissal, a plaintiff must plausihbly describe how the accused products correspond to the language of the asserted claims such that the defendant is on notice of what activity is accused of infringement. *See Lifetime*, 869 F.3d at 1379. Estech has done so here. Accordingly, the lack of explanation as to how the screenshots meet the language of the asserted claims does not doom the FAC at this stage.

### 2. Supporting Plausible Inference of Infringement

Next, Zoom argues that the other factual allegations in the FAC do not support a plausible inference that Zoom infringes the Asserted Patents for several other reasons. Zoom points to examples of key claim limitations for which it contends the FAC's allegations are insufficient.

#### a. '298 Patent

Zoom's motion focuses first on Limitation 13[b] of the '298 Patent. Limitation 13[b] requires "second and third telephone extensions coupled to a second IP server within a second LAN." FAC, Ex. A at 36. Estech identifies five candidates for the "second and third telephone extensions" in Zoom's system: dial-in telephone numbers for Zoom Meetings, "Call Me" callback

Case No.: 5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS
5

numbers, voicemail access extensions, automated attendant extensions, and interactive voice response extensions. *Id.* at 47–49. Estech alleges[3] that these extensions are held in Zoom's call controller (the "second IP server") residing within Zoom's cloud network (the "second LAN"). Opp. at 10. Zoom argues that the documents Estech cites in its claim chart fail to demonstrate that any of the proffered examples of "second and third telephone extensions" in Zoom's system are "coupled" to Zoom's cloud network, as required by Limitation 13[b].

The Court disagrees. As explained above, Estech does not need to prove its allegations to survive a motion to dismiss; it need only show that infringement is plausible. *Nalco*, 883 F.3d at 1350. Estech's claim chart provides a narrative description explaining that Zoom's VoIP phones register to Zoom's cloud, and each user's telephone extension is held within a call controller within Zoom's cloud network. FAC, Ex. A at 36. This explanation plausibly satisfies the "coupling" aspect of Limitation 13[b].

However, Estech's infringement theory faces another, bigger issue: it is implausible when applied to the '298 Patent's other claim limitations. Limitation 13[g], for instance, requires "means for displaying on the first IP telephone a list of LANs coupled to the WAN, including the second and third LANs." FAC, Ex. A at 74–75. Under Estech's theory, limitation 13[g] requires that the first IP telephone display Zoom's cloud network (the "second LAN") and another "third LAN." The problem with this is that Estech alleges, "Zoom's cloud operates as a central PBX hub for *all* users." Opp. at 10 (emphasis added). If this were the case, displaying Zoom's cloud network (the "second LAN") would display every user in every LAN, so it would be redundant and unecessary for Zoom's system to display other LANs or for there to be any distinction between second and third LANs. Estech's allegations and arguments do not cure this apparent contradiction, which renders its direct infringement claim implausible. *See ALD Soc., LLC v.*

---

[3] In its reply brief, Zoom notes that Estech asserts infringement theories in its opposition brief that are not alleged in the FAC. There do seem to be some discrepancies between what Estech argues in its brief and the factual allegations in the FAC, but they do not change the result. So, for purposes of this analysis, the Court considers the version of Estech's infringement theory as set forth in Estech's opposition brief.

Case No.: 5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS

6

1  *Verkada, Inc.*, 654 F. Supp. 3d 972, 978 (N.D. Cal. 2023) (finding that an infringement theory

2  based on an implausible construction failed to state a claim for patent infringement). Accordingly,

3  Estech has not plausibly alleged infringement of the '298 Patent.

### b. '684 Patent

As for the '684 Patent, Zoom contends that the FAC lacks factual allegations sufficient to infer that Zoom practices key limitations of Claim 42. More specifically, Zoom argues that Estech has not plausibly alleged that Zoom practices a "throttling step" that "further comprises the step of adjusting a level of throttling of the data in response to the mode level included in the throttling signal" (in Claim 41, from which asserted Claim 42 depends) and further "setting the mode level to a most aggressive mode" (Limitation 42[a]). FAC, Ex. B at 50–55. In the FAC, Estech cites a Zoom article titled "Implementing Quality of Service (QoS) for Zoom Phone" and alleges that Zoom's QoS protocol implements the "throttling" step via standard session initiation protocol ("SIP") features for overload control. *E.g.*, *id.* at 52–53. According to Estech, Zoom's article demonstrates that Zoom's implementation of QoS prioritizes Zoom Phone traffic over other network traffic, which is effectively a throttling step. Estech further avers that Zoom uses SIP Overload Control features to set levels or "modes" of throttling up to a "most aggressive" level. *Id.*

These allegations come close to sufficiently stating a claim for direct infringement of the '684 Patent but still fall short. Estech's argument that Zoom's QoS protocol is equivalent to a "throttling" step is well taken. However, even if the SIP Overload Control features enable the setting of "modes" of throttling up to a "most aggressive" mode, Estech does not allege that Zoom integrates those features of SIP in the Accused Instrumentalities. Nor does Estech allege facts to support its apparent assumption that Zoom must implement SIP Overload Control simply because such features are industry standard. Indeed, while the allegations show that it is *possible* Zoom could practice the claim requirements, they do not rise to the level of demonstrating it is *plausible* Zoom does so. This falls short of the relevant pleading standard set forth in *Twombly/Iqbal*. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a

Case No.: 5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS
7

1 defendant's liability, it stops short of the line between possibility and plausibility of entitlement to
2 relief." (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557)).

### c.     '699 Patent

Zoom likewise argues that Estech's claim chart is insufficient to support an inference that Zoom performs Limitation 1[h] of the '699 Patent.  Limitation 1[h] requires "streaming voice data containing the voice mail box to the telecommunications device over the audio path."  FAC, Ex. C at 34.  In alleging that Zoom practices this limitation, Estech relies on a single Zoom support page titled "Zoom Phone Certified Hardware" that concerns encryption of voice call media on SIP devices.  *Id.*  This document, according to Estech, shows that Zoom's system streams encrypted voice data from a voice mail box to telecommunication devices like phones.  But as Zoom correctly points out, the page only concerns streaming real-time phone calls, not asynchronous voicemails.  It does not logically follow that because Zoom streams voice calls that it does the same for voicemails.

Estech counters that release notes for third-party AudioCode hardware phones cited elsewhere in the '699 Patent claim chart demonstrate that Limitation 1[h] is met.  Opp. at 19–20 (citing FAC, Ex. C at 35–36).  Estech claims this document shows that in Zoom's system, "voicemail is stored on a server and the phone retrieves it over a SIP/RTP session."  FAC, Ex. C at 35.  As an initial matter, it is unclear whether Zoom can be held liable for direct infringement based on AudioCode's hardware phones.  But assuming that it can, the Court reads Estech's cited document differently.  While it does discuss voicemail capabilities, the document does not reference any feature that allows for live streaming of voicemails from a server to a phone.  Instead, the cited portion of the release notes state that "SIP device users can listen electronically stored voice messages that callers leave for them." ECF No. 69-2 at 55.  This statement says nothing of users' ability to stream voicemails in real time from a separate server and could just as well mean that users can download voicemails to their phones for later asynchronous listening.  Estech does not allege other facts that support its conclusion that Zoom practices Limitation 1[h].  As such, Zoom has not plausibly alleged infringement of the '699 Patent.

### 3.      Distinguishing Amongst Accused Instrumentalities

Finally, Zoom contends that the FAC fails to state a claim for infringement because it does not distinguish between the various Accused Instrumentalities. Estech accuses numerous products or services by name, as well as other unnamed "products and services that incorporate the same or similar technology, that employ VoIP to perform various functions." FAC ¶ 21. These products and services cover a wide range of functionalities, ranging from hardware phones to software and network services. According to Zoom, this mixing and matching of different Accused Instrumentalities is insufficient to make a plausible claim of infringement, particularly because the Accused Instrumentalities have a diverse range of different features and functionalities.

The Court agrees. District court authority regarding how specifically a plaintiff must identify the products or services alleged to infringe their patents somewhat varies, with some courts requiring more specificity and others less. *See Pat. Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-CV-229, 2012 WL 10978964, at *3 & nn. 3, 4 (E.D. Tex. July 27, 2012) (collecting cases and noting that "[s]ome courts require plaintiffs to identify specific products or services while others require the identification of a general category of products"); *Bender v. LG Elecs. U.S.A., Inc.*, No. C 09-02114 JF (PVT), 2010 WL 889541, at *4–5 (N.D. Cal. Mar. 11, 2010) (similar). However, courts consistently require at least enough specificity to put the defendant on notice as to what it must defend. *Pat. Harbor*, 2012 WL 10978964 at *3 ("The required detail level of the description is dictated by the facts and circumstances surrounding the action such that the complaint, taken as a whole, puts the defendant on notice of what it is supposed to defend."); *Bender*, 2010 WL 889541 at *5 (finding persuasive "those decisions requiring enough specificity to give the defendant notice of what products or aspects of products allegedly infringe").

Here, Estech purports to err on the side of more specificity by identifying Zoom products and services by name. Yet by identifying a large swath of different Zoom products and services and not distinguishing between them, Estech fails to give Zoom sufficient notice of the conduct of which it is being accused. Estech asserts, without explanation, that different products meet

Case No.: 5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS

9

1    different claim elements in the same asserted claim, which is implausible given the varying and
2    wide-ranging features and functionalities of the Accused Instrumentalities. *See TeleSign Corp. v.*
3    *Twilio*, No. 16-2106-PSG (SSx), 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016); *Geovector*
4    *Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9,
5    2017). Moreover, Estech does not squarely address this argument in its opposition, giving the
6    Court no reason to reach a different outcome. Failure to distinguish between the Accused
7    Instrumentalities is thus another basis for dismissing Estech's direct infringement claim.

*   *   *

In sum, Estech fails to plausibly allege that the Accused Instrumentalities infringe. The Court thus GRANTS Zoom's motion to dismiss the claim for direct infringement. The Court is somewhat skeptical that Estech will be able to cure the pleading deficiencies the Court identifies in this Order, but nonetheless GRANTS leave to amend out of an abundance of caution.

### B.     Indirect and Willful Infringement

Having failed to allege any plausible claim for direct infringement of the Asserted Patents, Estech's indirect and willful infringement claims also fail. *See e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-CV-05790, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (dismissing indirect infringement claim where complaint failed to state direct infringement claim); *see also Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc.*, No. 23-CV-05792, 2024 WL 3422598, at *3 (N.D. Cal. July 16, 2024) (dismissing willful infringement claim where complaint failed to state a claim for direct infringement). The Court therefore GRANTS Zoom's motion as to Estech's claim for indirect infringement of the Asserted Patents.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Zoom's motion. The Court further grants Estech leave to amend, and any amended complaint must be filed within 21 days of this Order.

Case No.: 5:24-cv-02528-EJD
ORDER GRANTING MOTION TO DISMISS
10

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: December 26, 2025

EDWARD J. DAVILA
United States District Judge